UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVI WEISS, | Case No. 16-cv-00661-EMC |
| Plaintiff, | **PUBLIC/REDACTED VERSION** |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| SEE'S CANDY SHOPS, INC., et al., | Docket No. 39 |
| Defendants. | |

Plaintiff Avi Weiss has filed a putative class action against Defendants See's Candy Shops, Inc. and See's Candies Inc. (collectively, "See's"), alleging that See's misrepresented certain products, such as its Classic Red Heart Assorted Chocolates, as being Kosher certified when, in fact, they were not. Although Mr. Weiss has asserted only state law claims, he filed suit in federal court based on diversity jurisdiction. Currently pending before the Court is See's motion to dismiss. According to See's, the Court lacks subject matter jurisdiction over the case. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** See's motion.

## I.    FACTUAL & PROCEDURAL BACKGROUND

In his class action complaint, Mr. Weiss alleges as follows.

See's manufactures, promotes, and distributes chocolates and other candy products. *See* Compl. ¶ 20. See's sells its products in retail stores known as See's Candies Shops throughout the country. *See* Compl. ¶ 21. In each of the stores, See's offers a selection of Kosher certified products. *See* Compl. ¶ 22. Kosher certification indicates that the "processing, preparation, and ingredients of the food meet certain quality and control standards that conform to Jewish dietary laws." Compl. ¶ 16.

United States District Court
For the Northern District of California

1    To show that a product is Kosher certified, See's puts a "prominent and commonly known

2    symbol for Kosher certification on large signs placed directly above the kosher certified

3    merchandise displayed in [its] stores." Compl. ¶ 22. "Consumers . . . look for the kosher symbol

4    on these signs to make their purchasing decisions." Compl. ¶ 24.

5    See's has represented to its customers that certain candies, including but not limited to the

6    "Valentine's Day Classic Red Heart Box in various sizes and weights," are Kosher certified.[1]

7    Compl. ¶ 25. In fact, they were not. Compl. ¶ 25. According to Mr. Weiss, he and other putative

8    class members "have been harmed because they overpaid for the products (or would not have

9    purchased the products) had they known that the products were not Kosher certified." Compl. ¶

10   26.

11   "In addition to monetary damages, [Mr. Weiss] seeks injunctive relief to stop [See's] from

12   falsely marketing some of [its] products as Kosher certified and to force [See's] to warn

13   purchasers that certain candies sold as Kosher certified, are not in fact Kosher certified." Compl. ¶

14   36.

15   The class that Mr. Weiss seeks to represent is as follows: "All individuals nationwide who,

16   from four years prior to the filing of this Complaint [on February 9, 2016] through [the] date of

17   certification purchased a product from a See's Candies Shop that was marketed as Kosher certified

18   when the product was not Kosher certified." Compl. ¶ 37.

19   Based on, *inter alia*, the above allegations, Mr. Weiss has asserted the following claims:

20   (1)    Breach of express warranty in violation of California Commercial Code § 2313;

21   (2)    Unlawful, unfair, and fraudulent business acts and practices in violation of

22   California Business & Professions Code § 17200;

23   (3)    Violation of the California Consumer Legal Remedies Act, *see* Cal. Civ. Code §

24   1750, *et seq.*;

25   (4)    False advertising in violation of the California Business & Professions Code §

26   17500; and

27

28   _____

[1] Mr. Weiss himself purchased a Valentine's Day Classic Red Heart Box. *See* Compl. ¶ 31.

2

1    (5)    Fraudulent inducement.

2    According to Mr. Weiss, "[t]he Court has original jurisdiction over this action pursuant to

3    28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state

4    different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest

5    and costs, and (c) none of the exceptions under that subsection apply to this action."  Compl. ¶ 12.

6                                        **II.    DISCUSSION**

7    A.    Legal Standard

8    Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may move for a

9    dismissal based on lack of subject matter jurisdiction.  "Rule 12(b)(1) jurisdictional attacks can be

10   either facial or factual."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Where there is a

11   facial attack, a court considers only the complaint.  *See id.*; *see also Wolfe v. Strankman*, 392 F.3d

12   358, 362 (9th Cir. 2004) (stating that, "'[i]n a facial attack, the challenger asserts that the

13   allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction'").

14   With a factual attack, however, a court "need not presume the truthfulness of the plaintiffs'

15   allegations" and "may look beyond the complaint."  *See White*, 227 F.3d at 1242; *see also Wolfe*,

16   392 F.3d at 362 (noting that, in a factual motion to dismiss, the moving party presents affidavits or

17   other evidence).

18   In the instant case, See's presents both a facial and a factual attack to subject matter

19   jurisdiction.

20   B.    Facial Attack

21   According to See's, as a facial matter, Mr. Weiss has failed to adequately plead diversity

22   jurisdiction because, in his complaint, (1) he has failed to allege his own citizenship and (2) his

23   allegation that the amount in controversy exceeds $5 million is entirely conclusory in nature and

24   does not specify any facts to support the claim.  The Court need not dwell on See's facial attack

25   because, even if there were deficiencies with the complaint, Mr. Weiss would have an opportunity

26   to cure those deficiencies with an amendment.  *See* 28 U.S.C. § 1653 (providing that "[d]efective

27   allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts"); *May*

28   *Dep't Store v. Graphic Process Co.*, 637 F.2d 1211, 1216 (9th Cir. 1980) (noting that "an action

3

1    should not be dismissed for lack of jurisdiction without giving the plaintiff an opportunity to be

2    heard unless it is clear the deficiency cannot be overcome by amendment"); *Jorio v. Benmansour*,

3    No. 15-cv-00063 NC, 2015 U.S. Dist. LEXIS 188743, at \*3 (N.D. Cal. Aug. 25, 2015)

4    ("permit[ting] Jorio to amend his complaint to state that he was domiciled in California at the time

5    he filed suit to cure the subject matter jurisdiction defect").  Moreover, as reflected by the parties'

6    briefs, the crux of the dispute is not the facial challenge to subject matter jurisdiction but rather the

7    factual challenge.  The Court thus turns to the factual challenge.

8    C.    Factual Challenge

9        1.    Legal Certainty v. Preponderance of the Evidence/Prima Facie Case

10    As an initial matter, the Court addresses Mr. Weiss's contention that, for a defendant to

11    prevail on a factual attack, it must be shown to a legal certainty that there is not subject matter

12    jurisdiction.  See's responds that the legal certainty standard applies only where there is a facial

13    attack, not a factual one.

14    Neither party's position is entirely correct.  Where there are disputed facts, those facts are

15    resolved by a preponderance of the evidence, but, after that, the predictive legal certainty test does

16    apply.  *See, e.g.*, *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006) (stating

17    that "a proponent of federal jurisdiction must, if material allegations are contested, prove those

18    jurisdictional facts by a preponderance of the evidence" and that, "[o]nce the facts have been

19    established, . . . [o]nly if it is 'legally certain' that the recovery (from plaintiff's perspective) or

20    cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor

21    may the case be dismissed"); *Frederico v. Home Depot*, 507 F.3d 188, 194 (3d Cir. 2007) (stating

22    that, "where disputes over factual matters are involved, the . . . preponderance of the evidence

23    standard is appropriate for resolving the dispute"; but "'when relevant facts are not in dispute or

24    findings have been made,' the district court should adhere to the 'legal certainty test'"); *cf. Naffe v.*

25    *Frey*, 789 F.3d 1030, 1040 (9th Cir. 2015) (stating that where "the plaintiff files suit originally in

26    federal court . . . and the complaint affirmatively alleges that the amount in controversy exceeds

27    the [§ 1332] jurisdictional threshold[,] . . . the legal certainty test applies"; but one situation where

28    the legal certainty standard is met is "when independent facts show that the amount of damages

4

1    was claimed merely to obtain federal court jurisdiction"). That legal certainty test which applies

2    to complaint filed in federal (in contrast to cases removed from state to federal court) has been

3    stated variously – for example, "'[i]n cases brought in the federal court . . . it must appear to a

4    legal certainty that the [plaintiff's] claim is really for less than the jurisdictional amount to justify

5    dismissal.'" *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (quoting *St. Paul Mercury*

6    *Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-90 (1938); adding that "'[a] different situation is

7    presented in the case of a suit instituted in a state court and thence removed [–] [t]here is a strong

8    presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a

9    federal court or that the parties have colluded to that end'"). Stated differently, the legal certainty

10   standard is met where the plaintiff has established a colorable claim. *See St. Paul Mercury*, 303

11   U.S. at 289 (stating that, "if from the face of the pleadings, it is apparent to a legal certainty, that

12   the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a

13   like certainty, that the plaintiff never was entitled to recover that amount, and that his claim was

14   therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed").

15          In the Ninth Circuit, where there are disputed facts, a plaintiff is permitted to make only a

16   prima facie showing of subject matter jurisdiction (*i.e.*, the plaintiff is not held to the higher

17   preponderance-of-the-evidence standard) if only written materials are submitted for the court's

18   consideration. *See Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.*, 655 F.2d 938,

19   942 (9th Cir. 1985); *see also Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th

20   Cir. 1977) (explaining that, "[i]f the court determines that it will receive only affidavits or

21   affidavits plus written materials, these very limitations dictate that a plaintiff must make only a

22   prima facie showing of jurisdictional facts through the submitted materials in order to avoid a

23   defendant's motion to dismiss").

24          In the case at hand, there are relevant facts in dispute (*i.e.*, the extent of the mislabeling

25   problem), and, as the parties have submitted only written materials to the Court, Mr. Weiss is

26   required to make only a prima facie showing of jurisdiction. For the reasons discussed below, Mr.

27   Weiss has failed to satisfy that low standard – that is, he has failed to make a prima facie case that

28   the amount-in-controversy exceeds $5 million.

5

2.      Economic Damages

In its factual challenge, See's focuses on the amount-in-controversy requirement. As noted above, Mr. Weiss seeks on his own behalf, and on the behalf of a putative class, economic damages, attorney's fees, and injunctive relief. The main relief sought is economic damages.[2]

According to See's, the economic damages of the putative class amount to $0 because See's did not and does not charge more for its Kosher products compared to its non-Kosher products. This argument, however, is not compelling because it glosses over the fact that, for a person who is Kosher adherent, a Kosher-certified product is not simply a dietary preference but rather a dietary restriction. *Ivie v. Kraft Foods Global, Inc.*, No. C-12-02554-RMW, 2015 U.S. Dist. LEXIS 5196 (N.D. Cal. Jan. 14, 2015), and *Khasin v. R.C. Bigelow, Inc.*, No. 12-cv-02204-WHO, 2016 U.S. Dist. LEXIS 42735 (N.D. Cal. Mar. 29, 2016), are both distinguishable because they deal with dietary preferences. In the instant case, the mislabeled product is arguably worthless to the Kosher adherent individual who may be entitled to a refund.

Even if damages were to be measured by the refund of full amounts paid for Kosher-mislabeled products, however, See's contends economic damages would still be well below the $5 million threshold required by § 1332. In support of this claim, See's conducted an internal investigation into the mislabeled price cards and determined that economic damages amounted to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Reply at 10 ("See's . . . calculated the amount in controversy if every purchaser . . . of a mistakenly labeled product received a full refund, and still the theoretical maximum award would be only ▮▮▮▮▮▮."); Reply at 11 ("[E]ven if the Court were to include sales of Maple Cashew Brittle in the amount in controversy, See's sold ▮▮▮▮▮▮ of the product while the kosher insignia mistakenly appeared on the website . . . .").

Mr. Weiss contends that the amount in controversy has been met because See's has conceded that its total sales of Kosher products for the relevant period is ▮▮▮▮▮▮ However, the total sales of Kosher products do not establish the amount in controversy because Mr. Weiss is

---

[2] See's argues that the value of any injunctive relief is minimal at best, and Mr. Weiss does not dispute such. Similarly, the parties agree that attorney's fees would likely be a limited percentage of the economic damages awarded (*e.g.*, 25 percent).

6

1    suing only for products marketed as Kosher certified when the products were not in fact Kosher

2    certified.  *See* Compl. ¶ 37 (defining the class as "[a]ll individuals nationwide who. . .  purchased a

3    product from a See's Candies Shop that was marketed as Kosher certified when the product was

4    not Kosher certified").  Mislabeled products are only a subset of the total sales of Kosher products

5    and the only evidence presented (even after Mr. Weiss was afforded discovery) indicate that

6    subset is an extremely small proportion of those sales.

7    Contrary to what Mr. Weiss argues, *Lewis v. Verizon Communications, Inc.*, 627 F.3d 400

8    (9th Cir. 201), does not support his position.  In *Lewis*, the plaintiff filed a class action in state

9    court after Verizon billed her for services that she never ordered.  "Describing these charges as

10   'unauthorized,'" the plaintiff sought "to represent a class of landline Verizon customers in

11   California who have been billed for such services that they never expressly agreed to or

12   requested." *Id.* at 397.  Verizon removed the case to federal court, arguing that the amount in

13   controversy exceeded $5 million.  In support of this claim, Verizon submitted evidence that

14   members of the putative class were billed more than $5 million during the relevant period.  In

15   evaluating the propriety of Verizon's removal, the Ninth Circuit took note of the district court's

16   refusal

17   
18                to accept the total billings as representing the amount in controversy.
              Instead, looking to the allegations of the complaint, it held that the
              total billings could not represent the amount in controversy because
              the complaint was claiming liability only for charges that were

19            "unauthorized."  The district court thus assumed total billings would
              include both authorized and unauthorized charges and held that the

20            Defendant had failed to meet its burden under our case law to show
              the amount in controversy, i.e., unauthorized charges, exceeded the

21            jurisdictional amount.

22   *Id.* at 400.  The Ninth Circuit, however, disagreed with the district court's analysis.  It explained

23   that "[t]here is no evidence or allegation to support [the district court's] assumption" that total

24   billings included both authorized and unauthorized charges.  *Id.*  "[T]he Defendant has put in

25   evidence of the total billings *and the Plaintiff has not attempted to demonstrate, or even argue,*

26   *that the claimed damages are less than the total billed. . . . Hence, on this record, the entire*

27   *amount of the billings is 'in controversy.'" Id.* (emphasis added).

28   Here, See's did provide evidence to show that the amount in controversy is less than the

7

1  total sales of its Kosher products – *i.e.*, that any mislabeling constituted only a tiny subset of the

2  total sales of Kosher products.  Mr. Weiss, despite having discovery, has failed to show that

3  portion exceeds $5 million.

4        Faced with this problem, Mr. Weiss suggested for the first time at the hearing that, at the

5  very least, it would be reasonable to *assume* that total sales of mislabeled products would likely

6  exceed $5 million given the large total sales of Kosher products.  But this argument is based on

7  sheer speculation.

8        Mr. Weiss argues that See's internal investigation (in which it determined that the amount

9  in controversy was, at best, approximately ████████ or less) did not account for all mislabeling

10  by See's.  Mr. Weiss contends, for example, that See's only investigated price card mislabeling

11  and not other kinds of mislabeling (*e.g.*, package mislabeling).  Mr. Weiss also points out that

12  See's internal study did not include mislabeling on products such as See's Christmas Totes and

13  Maple Cashew Brittle and argues that, as a result, there is a systemic problem with mislabeling on

14  the part of See's that is larger than what the internal study suggests.

15        But even if See's internal investigation did not account for, *e.g.*, package mislabeling or

16  mislabeling on the Christmas Totes and Maple Cashew Brittle,[3] Mr. Weiss has failed to provide

17  any evidence about the dollar value of this mislabeling.[4]  He has not demonstrated there is

18  evidence of mislabeling sufficient in magnitude to be material.  Nor does the purported

19  mislabeling of the Christmas Totes and Maple Cashew Brittle establish the existence of a wide

20  systemic problem.  See's declaration stating that it had to correct "its master data concerning

21

---

22  [3] The Court notes that the alleged mislabeling of the Maple Cashew Brittle took place on See's

23  website.  Because Mr. Weiss did not include website mislabeling within the definition of the class, *see* Compl. ¶ 37 (defining the class as "[a]ll individuals nationwide who, from four years prior to

24  the filing of this Complaint [on February 9, 2016] through [the] date of certification purchased a product *from a See's Candies Shop* that was marketed as Kosher certified when the product was

25  not Kosher certified") (emphasis added), the Court could well ignore the alleged mislabeling of the Maple Cashew Brittle on See's website – *i.e.*, it would not count towards the dollar threshold

26  applicable to this case.  However, even if the product could count toward the dollar threshold, See's has provided evidence that sales of the product were not that significant.  *See* Millington

27  Reply Decl. ¶ 6.

28  [4] The only evidence in the record is that the sales of Brittle was ████████ from 2013 through
February 2017.  *See* Millington Reply Decl. ¶ 6.

1  Maple Cashew Brittle to ensure the website would not include a kosher certification insignia in the

2  future," Millington Reply Decl. ¶ 4, does not indicate there was a problem with See's master data

3  for other products.

4  The Court underscores that Mr. Weiss's failure to quantify in some way the dollar value of

5  package mislabeling or mislabeling on the Christmas Totes or find any evidence suggesting a

6  wider systemic labeling problem is especially problematic because it gave Mr. Weiss the

7  opportunity to conduct jurisdictional discovery.  Indeed, Mr. Weiss had the opportunity to take

8  jurisdictional discovery *after* See's filed its motion to dismiss for lack of subject matter

9  jurisdiction in which it explained that it had conducted an internal investigation to see what the

10  monetary value of the mislabeling was (assuming a full refund on mislabeled products).

11  Because Mr. Weiss had the opportunity to take jurisdictional discovery and yet still failed

12  to make a prima facie case that the amount in controversy exceeds $5 million, he has failed to

13  establish subject matter jurisdiction in this Court.  And given he was afforded an opportunity to

14  take discovery, dismissal without leave to amend is warranted.

### III.    CONCLUSION

15

16  Accordingly, See's motion to dismiss for lack of subject matter jurisdiction is granted, and

17  with prejudice as to the jurisdictional question.  The Clerk of the Court is ordered to enter

18  judgment in accordance with the above and close the file in this case.

19  This order disposes of Docket No. 39.

20

21  **IT IS SO ORDERED**.

22

23  Dated: August 3, 2017

24  _____

    EDWARD M. CHEN
25  United States District Judge

26

27

28

9